Eastern District of Kentucky
FILED
AUG 16 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

CRIMINAL CASE NO. 03-24-KKC
§2255 MOTION TO VACATE FILED AS:
CIVIL CASE NO. 05-495-KKC

UNITED STATES OF AMERICA            PLAINTIFF

VS.          **REPORT AND RECOMMENDATION**

ROBERT KEITH ELLIS            DEFENDANT

\*\*\*\*\*\*\*

     This matter is before the Court upon the "Motion to Vacate, Set Aside, or Correct Sentence" (DE#73) and "Amendments" (DE#90, 92) pursuant to 28 U.S.C. §2255 by the pro se defendant, Robert Keith Ellis. The motion was referred to the undersigned Magistrate Judge for initial consideration and a report and recommendation. Having fully considered the record, including the motion (DE#74), amendments (DE#90, 92), response (DE#83), reply (DE#94), amended response (DE#102), amended reply (DE#107), and related filings (DE#104), the Magistrate Judge makes the following proposed findings of fact and conclusions of law:

**I. Findings of Fact**

     On December 20, 2002, a state warrant for petitioner's arrest was issued for the offense of manufacturing methamphetamine. On January 27, 2003, Detective Richard Dalrymple received information from the Kentucky Department of Public Safety that it had received a complaint earlier that day that Ellis was staying at 1867 Lily Road and was manufacturing methamphetamine there. Dalrymple contacted KSP Detective Jason O'Bannon and was informed about the existing arrest warrant for Ellis.
     Later that day, Det. Dalrymple, Det. O'Bannon, two other uniformed officers, and two federal agents set up surveillance outside the trailer at 1867 Lily Road. The officers observed a vehicle in the driveway and found that is was

registered to a female by the last name of Ellis.[1] After watching the residence for nearly an hour, the two detectives approached the front door of the trailer, while the two federal agents went to the back door. Det. O'Bannon knocked on the front door three times and announced the presence of police officers after each knock. He waited several seconds after each knock before knocking again. The detectives received no response, but heard footsteps of someone running from the front door toward the back door. The officers then forcibly entered the front door.

Inside, the detectives found Ellis's daughter (Shaina Rice) and her boyfriend near the front door. The federal agents at the rear of the trailer intercepted Ellis's girlfriend, Tiffany Arnold, trying to flee out the back door, although her six-year-old child was still inside. The detectives heard someone else running down the hallway toward the back door. Det. Dalrymple pulled down a sheet that was covering the entrance to the hallway and saw Ellis heading for the back door. He told Ellis to stop, and Ellis dropped a packet of methamphetamine and a .380-caliber gun. The officers put Ellis up against the wall, patted him down, and found a concealed .22-caliber gun hidden in a cast on his arm.

The officers conducted a protective sweep of the trailer to see if anyone else was there. Det. O'Bannon knew Ellis, as he had previously arrested him for making methamphetamine. Det. Dalrymple arrested Ellis and gave him a *Miranda* warning read from a statement of rights card. Ellis indicated that he understood his rights and had no questions. He did not ask for an attorney, agreed to answer some questions, and signed a written statement-of-rights form at 11:00 a.m. Ellis then admitted that he owned the .380-caliber gun and told the officers he hadn't been making much methamphetamine lately because he was having difficulty getting supplies to make it. He orally consented to a search of the trailer and signed a written consent-to-search form, which indicates that it was also signed by his daughter and two witnesses at 11:01 a.m.

During the subsequent search of the trailer, officers found a 12-gauge shotgun, a cell phone, Tiffany Arnold's driver license, a .22-caliber semiautomatic pistol, and various items typically used to manufacture methamphetamine, such as rubbing alcohol, hydrogen peroxide, rock salt, lye, fuel, and coffee filters. Ellis also consented to a search of his SUV vehicle and signed another written consent-to-search form at 12:11 p.m., with the signatures of two witnesses. Det. Dalrymple testified that the officers found additional supplies for the manufacture of methamphetamine in Ellis's vehicle.

---

[1]The address listed on the arrest warrant was not the Lily Road address.

On April 24, 2003, a London Grand Jury returned a three-count indictment against Ellis. This was followed by a superceding five-count indictment on November 7, 2003. Ellis was charged in Count 1 with violating 18 U.S.C. §922(g)(1) for possessing firearms while being a convicted felon, in Count 2 with violating 21 U.S.C.§841(a)(1) for manufacturing methamphetamine, in Count 3 with violating 21 U.S.C.§841(a)(1) for knowingly possessing methamphetamine with intent to distribute, in Count 4 with violating 21 U.S.C. §843(a)(6) for knowingly possessing equipment and ingredients to make methamphetamine, and in Count 5 with violating 18 U.S.C. §924(c)(1)(A) for carrying a firearm during and in relation to a drug trafficking crime.

On August 7, 2003, this Court appointed Paul Croley under the Criminal Justice Act as counsel for Ellis. This attorney met with Ellis numerous times at the Laurel Detention Center, discussed potential statutory and guideline penalties for the offenses with him, and entered a "not guilty" plea for him in court. After Ellis' arraignment, counsel spoke with the prosecutor, AUSA Roger West, about the case. Counsel indicates in his affidavit that he does not at this point remember any specific plea negotiations, but may have generally discussed guideline offense levels. Despite repeated attempts by counsel, Ellis repeatedly refused to discuss the details of his case or otherwise cooperate with counsel, and told Mr. Croley he was hiring someone else to defend him. Mr. Croley advised the Court of this situation at the motions hearing. Ellis then retained his own private counsel, William M. Butler, Jr., who represented Ellis at trial and on direct appeal.

The petitioner's new counsel filed three pre-trial motions to suppress the evidence, challenging 1) the voluntariness of Ellis' consent to search the residence where he was staying (because the police had allegedly entered without justification), 2) the voluntariness of his consent to search his vehicle, and 3) the admissibility of his own incriminating statements, claiming that the police violated his Fifth and Sixth Amendment rights and his rights under *Miranda*. See DE#15, 22, 23. The motions were denied, and Ellis proceeded to trial. The jury found him guilty of all charges. The District Judge sentenced Ellis to 51 concurrent months imprisonment on the felon-in-possession and drug charges, to be followed by 60 consecutive months of imprisonment for carrying a firearm during and in relation to a drug crime, for a total prison term of 111 months. DE#70, Sentencing TR, p. 19.

Ellis appealed the district court's denial of the pre-trial motions to suppress, arguing that 1) the officers did not have probable cause to enter the residence where Ellis was staying, 2) the officers violated 18 U.S.C. §3109 by allegedly not announcing their presence and the purpose of their visit; and 3) Ellis was given

warnings violative of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Sixth Circuit Court of Appeals affirmed in an unpublished opinion rendered on March 22, 2005. *United States v. Ellis*, 125 Fed. Appx. 691 (6th Cir. (Ky.) 2005). The petitioner thereafter filed his §2255 motion, which was entered in the docket on September 9, 2005. DE#73. After additional briefing for several "amendments" by petitioner, this matter is now ripe for review.

## II. Issues Presented

Ellis alleges in his §2255 motion that his trial counsel was ineffective because 1) he "failed to adduce evidence, failed to interview or call known witnesses crucial to development of a 4th Amendment violation..." (DE#73, ¶12), and 2) counsel misadvised him regarding the plea offer. On April 7, 2006, Ellis subsequently raised additional arguments (DE#90), namely, that his counsel was ineffective on appeal because 3) he did not argue error under *Booker*, and 4) he did not challenge the sufficiency of the evidence for the conviction under 18 U.S.C. §924(c). On April 27, 2006, Ellis also claimed (DE#92) that his counsel was ineffective on appeal because 5) he "failed to get the district court and the Court of Appeals to answer his arguments of *Stegald v. United States*, 451 U.S. 204 (1998)."

## III. Conclusions of Law

### Statutory Jurisdiction

Amended 28 U.S.C. §2255 provides in relevant part that "A prisoner in custody....may move the court which imposed the sentence to vacate, set aside or correct sentence." Defendant has correctly filed this motion in the sentencing court that imposed the federal sentence now challenged. When he filed this motion, defendant was in federal custody at the Lee Adjustment Center in Beattyville, Kentucky. The petitioner indicates he has now been moved to F.C.I.-Manchester, in Kentucky.

### Applicability of AEDPA, Successiveness

The "Antiterrorism and Effective Death Penalty Act of 1996" ("AEDPA") was enacted on April 24, 1996, and its provisions apply to motions, such as the present one, filed after such date. *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1518, 146 L.Ed.2d 389 (2000); *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Under the AEDPA, courts must first determine whether a §2255 motion is "successive". *In re Sims*, 111 F.3d 45 (6th Cir. 1997) (per curiam). Defendant indicates he had not filed any other §2255 motions, and the record does not reflect any.

### AEDPA One Year Period of Limitations

The AEDPA provides that §2255 motions are subject to a one-year period of limitations that generally runs from "the date on which the judgment of conviction becomes final". 28 U.S.C. §2255, ¶ 6(1); *Clay v. United States*, 537 U.S. 522, 123 S.Ct. 1072, 1074, 155 L.Ed.2d 88 (2003). The petitioner's judgment of conviction was entered on April 1, 2004 (DE#64), and he was sentenced on April 7, 2004. The Sixth Circuit Court of Appeals affirmed said conviction on March 22, 2005, and Ellis had 90 days to seek certiorari. Ellis signed (and presumably mailed) the present §2255 motion on September 7, 2005 . This is generally deemed to be the "filing" date under the prisoner mailbox rule. *Sanchez-Castellano v. United States*, 358 F.3d 424, 425 (6th Cir. 2004)(applying mailbox rule to pro se §2255 motions). The petitioner's §2255 motion was timely filed within the AEDPA's one-year period of limitations. To the extent Ellis filed several additional claims, those claims were also timely filed in April of 2006, which is within one-year of the expiration of the time for seeking certiorari.

### Standard for Ineffective Assistance of Counsel

The United States Supreme Court enunciated the standard for ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To make out an ineffective assistance of counsel claim, a petitioner must demonstrate objectively deficient performance by defense counsel and resulting prejudice. *Id.* at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having

produced a just result. *Id.*

The objective standard of reasonableness is highly deferential and includes a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. Strategic choices made by counsel after thorough investigation "are virtually unchallengeable....counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 690-91; *Skaggs v. Parker,* 235 F.3d 261, 268 (6th Cir. 2000), *cert. denied,* 534 U.S. 943 (2001).

In *Williams v. Taylor,* 120 S.Ct. 1495, 1513 (2000), the United States Supreme Court observed that the prejudice component of the *Strickland* test "focuses on the question of whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair....Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." See also, *Lockhart v. Fretwell,* 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

## Issue 1: Whether Counsel was Ineffective for Allegedly Not Investigating Adequately and For Not Calling Allegedly Key Witnesses at the Suppression Hearing

Ellis generally claims that his trial counsel did not adequately investigate the basis for the motions to suppress. He alleges that his counsel should have called "key" witnesses, including DEA Agents Jody Hughes and Fred Baker, at the suppression hearing. He claims that such agents would have testified in his favor regarding the circumstances of the forcible entry. However, Ellis' allegations are unsupported and speculative. He has put forth no evidence or facts suggesting that any such witnesses would actually have testified in his favor.

The record reflects that the two federal agents went to the back door of the trailer, while the two detectives went to the front door. Hence, the two federal agents could not have observed the "knock and announce" from their location at the rear of the residence. Defense counsel was not ineffective for not calling the two agents to testify. Given the circumstances of the arrest, it is highly unlikely that any testimony by these two agents would have been helpful to petitioner,

much less that they would have testified that they "simply crashed the door of the trailer" (DE#94, p. 4), as petitioner suggests. See *Millender v. Adams*, 2004 WL 1572692, *5 (6th Cir. (Mich.))("defense counsel has no obligation to call or even interview a witness whose testimony would not have exculpated the defendant"). Defense counsel wisely chose not to introduce further damaging testimony against his own client by calling more officers.

The record reflects that the Det. Dalrymple testified that he knocked and announced the officers' presence multiple times before forcibly entering the front door. Det. O'Bannon also testified consistently as to such facts. Although Ellis claims that additional testimony might have helped him, he has shown no plausible basis for such bare assertion. Ellis also alleges that counsel should have called Brian Reams, Department of Public Safety Director, to testify at the suppression hearing. He claims such witness "could have testified that he did not give a dispatch to Dective Dalrmple (sic) at the time Dalrmple (sic) testified that he received it." DE#94, p. 3. Ellis puts forth no factual basis for this allegation about the dispatch. In any event, defense counsel did call Ellis' daughter Shaina Rice, who was sitting on a couch inside the trailer when the officers entered, to testify at the suppression hearing regarding the forcible entry. Ellis also chose to take the stand on his own behalf. Ellis has shown no objectively deficient performance by his counsel with respect to investigating or litigating the motions to suppress, nor any resulting prejudice.[2]

## Issue 2: Whether Trial Counsel was Ineffective With Respect to the Plea Offer

Having proceeded to trial and been convicted, Ellis now claims that "counsel never informed me as to the strengths and weaknesses of the governments [sic] case against me except to assert that he would obtain a suppression of the evidence to be used against me so that I could intelligently assess what was my best interest..." DE#73, attached pages, "Ground Two". He claims his retained counsel misadvised him to reject the plea offer and said he didn't "trust" it. Apparently displeased with his sentence of 111 months, Ellis is

---

[2] Ellis fully appealed the denial of his pre-trial motions to suppress, and the Sixth Circuit Court of Appeals rejected his claims. Ellis may not relitigate such claims in the context of an ineffectiveness claim.

now attempting to obtain the benefit of the earlier plea offer that he rejected.

To the extent Ellis also claims in his reply that his initial CJA counsel was "ineffective" for not immediately obtaining a plea offer, the record reflects that such appointed counsel represented Ellis only for a very short period of time. During that brief time, appointed counsel met with his client repeatedly. However, despite counsel's diligent attempts to obtain information about the case from his client, Ellis refused to cooperate and told him he was getting a different lawyer. In any event, Ellis indicates that Mr. Croley "stated he would try to obtain a plea". DE#94, p. 7.

Mr. Croley indicates in his affidavit that he spoke with the prosecutor about the case, but does not recall any specific plea offers being made at that time. Retained counsel then took over the case and handled any further negotiations. Ellis simply regrets his own decision to reject the plea offer and is attempting to blame both of his attorneys. However, the record reflects no objective deficiency in his appointed counsel's performance, and petitioner has shown no resulting prejudice. The petitioner's unsupported allegations fall quite short of meeting the demanding requirements of the *Strickland* standard.

To the extent Ellis claims his subsequent retained counsel was ineffective with respect to the plea offer, petitioner acknowledges that such counsel did in fact communicate the plea offer to him. The United States confirms that it negotiated with such attorney and offered a plea agreement that would likely have resulted in a six-year sentence under the federal sentencing guidelines. Ellis complains that counsel allegedly told him he didn't "trust" the oral plea offer. Counsel can hardly be faulted for wanting to see the specific terms of a plea offer in writing before advising his client to make admissions or to accept and/or decline the plea offer. In any event, the matter did not proceed further because Ellis flatly rejected any sort of plea offer. He insisted on going to trial and cannot now obtain the benefit of the prior plea offer. Although Ellis now complains that he was not "fully advised" about the plea offer, his allegations are unsupported, generalized, and self-serving. Petitioner merely regrets his choice to proceed to trial and now wishes for a smaller sentence.

A defendant's conclusory allegations that his counsel misadvised him are subject to dismissal when they are unsupported by specific facts. See *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 1627, 52 L.Ed.2d 136 (1977); and see, *Bradshaw v. Stumpf*, 545 U.S. 175, 125 S.Ct. 2398, 2407, 162 L.Ed.2d 143 (2005) (observing that in evaluating a prisoner's claim that his plea was invalid, "we are

reluctant to accord much weight to his *post hoc* reevaluation of the wisdom of ...[his decision]").

In *Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003), the petitioner conceded that he was aware of the government's guilty plea offer, but argued that his counsel should have more strongly urged him to accept the plea offer. The Sixth Circuit Court of Appeals held that:

> "We do not believe this to be a proper basis upon which to find deficient performance by defense counsel. The decision to plead guilty--first, last, and always--rests with the defendant, not his lawyer. Although the attorney may provide an opinion on the strength of the government's case, the likelihood of a successful defense, and the wisdom of a chosen course of action, the ultimate decision of whether to go to trial must be made by the person who will bear the ultimate consequence of a conviction." *Id.*

Ellis acknowledges that his counsel communicated the plea offer to him, including the likely outcome of a six-year sentence of imprisonment under the federal sentencing guidelines under such plea offer. Ellis chose to reject the plea offer.

To the extent petitioner claims that his retained counsel "unreasonably" misjudged the likelihood of success of the motions to suppress,"[an] attorney's merely losing, being wrong, or miscalculating is not enough..." *McQueen v. Scroggy*, 99 F.3d at 1315 (6th Cir. 1996); and see, *Adams v. Jago,* 703 F.2d 978, 981 (6th Cir. 1983)("a defendant has not been denied effective assistance by erroneous tactical decisions if, at the time, the decisions would have seemed reasonable to the competent trial attorney"). The three motions in this case were extensively briefed and argued, and counsel reasonably believed he had a chance of success in suppressing certain evidence. The Sixth Circuit Court of Appeals has explained that:

> "Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted. Considerations like those frequently presented imponderable questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at

Page 9 of 15

the time..." *United States v. Cox*, 464 F.2d 937, 942 fn.6 (6th Cir. 1972), quoting *Brady v. United States*, 397 U.S. 742, 756-757, 90 S.Ct. 1463,1473, 25 L.Ed.2d 747 (1970).

In the present case, the petitioner took his chances on successfully obtaining suppression of the evidence against him and rejected the plea offer. He has not shown that his retained counsel was constitutionally ineffective for allegedly "misadvising" him to reject the plea offer while three extensively briefed motions to suppress were pending. A criminal defendant is entitled to competent counsel and a fair trial, not perfection. *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000).

### Issue 3: Whether Appellate Counsel was Ineffective for Not Raising a *Booker* Claim

In *Jones v. Barnes*, 463 U.S. at 745, 103 S.Ct. 3308 (1983), the United States Supreme Court held that defense counsel does not have the constitutional duty to raise every nonfrivolous issue requested by defendant. In fact, the Supreme Court observed, a "brief that raises every colorable issue runs the risk of burying good arguments." *Id.*, at 753; and see, *Smith v. Robbins,* 528 U.S. 259, 288, 120 S.Ct. 746, 765 (2000)("appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal"). The Sixth Circuit Court of Appeals has similarly explained that "[a]ppellate counsel is not ineffective simply he or she decides not to raise every possible argument on appeal." *Wright v. United States*, 182 F.3d 458 (6th Cir. 1999); *Anderson v. United States*, 221 F.3d 1333, 2000 WL 875729, *2 (6th Cir. (Ky.)).

Although a prisoner may allege a *Strickland* claim based on counsel's failure to raise a certain claim, the Supreme Court has observed that satisfying the first prong (objectively deficient performance by counsel) of the *Strickland* test requires a showing that the omitted issue was "clearly stronger than issues that counsel did present." *Robbins,* 528 U.S. at 288; see also, e.g., *Campbell v. United States*, 2004 WL 1888604, *1 (1st Cir. (Mass.)).

Ellis complains that a jury did not decide his sentencing enhancements and argues that his counsel should have argued for sentence reduction under the Supreme Court's decision in *United States v. Booker*, 125 S.Ct. 738 (2005). Such

case does not provide a basis for §2255 relief here. In *Booker*, the Supreme Court held that:

> "18 U.S.C.A. § 3553(b)(1), which makes the Federal Sentencing Guidelines mandatory, is incompatible with today's Sixth Amendment 'jury trial' holding and therefore must be severed and excised from the Sentencing Reform Act of 1984(Act). Section 3742(e), which depends upon the Guidelines' mandatory nature, also must be severed and excised. So modified, the Act makes the Guidelines effectively advisory, requiring a sentencing court to consider Guidelines ranges, see § 3553(a)(4), but permitting it to tailor the sentence in light of other statutory concerns, see §3553(a)."

The Supreme Court indicated that such decision applies to "all cases ... pending on direct review or not yet final". *Booker*, 125 S.Ct. at 769. The United States acknowledges that *Booker* was decided while Ellis' appeal was pending.

Ellis essentially claims that his sentence was improperly enhanced, that his counsel could have raised a *Booker* claim on appeal, and that counsel was therefore ineffective for not doing so. The United States points out that, contrary to petitioner's unsupported allegation, the District Court did *not* impose a two-level enhancement for possession of multiple firearms by Ellis. The record reflects that the District Judge found at sentencing that such enhancement was not applicable and that Ellis' adjusted offense level was 20, rather than 22. Hence, petitioner's claim is refuted by the record. He has not shown that such omitted issue was "clearly stronger than issues that counsel did present." *Robbins*, 528 U.S. at 288. Failure to raise meritless arguments does not constitute ineffective assistance of counsel. *Norris v. Schotten*, 146 F.3d 314, 336 (6th Cir. 1998). Petitioner indicates in his reply (DE#107) that the "Government is probably correct." Appellate counsel was not ineffective on such basis.

**Issue 4: Whether Appellate Counsel was Ineffective for Not Challenging the Sufficiency of the Evidence Regarding the 18 U.S.C. §924(c) Conviction**

The United States points out that the underlying issue regarding the sufficiency of the evidence of the firearm conviction had to be raised on direct appeal to be considered and is not a proper subject of a §2255 motion. In any

event, the record reflects that defense counsel did not appeal such issue because there was no factual basis for it. The defendant was apprehended while carrying a firearm hidden in the cast on his arm. During the same incident, the officers found supplies for making methamphetamine in the trailer where Ellis was staying and in his personal vehicle, which satisfies the element that the firearm be carried "during and in relation to" a drug trafficking crime. Defense counsel did not omit an issue that was "clearly stronger" than the issues he actually raised. See *Robbins,* 528 U.S. at 288.

**Issue 5: Whether Appellate Counsel was Ineffective for Not Getting the District Court and Sixth Circuit Court of Appeals to Answer His Arguments Under *Stegald v. United States*, 451 U.S. 204 (1998) Regarding an Allegedly Illegal Search and Seizure**

Petitioner argues that counsel should have prevailed with his argument under *Stegald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), and that he was therefore ineffective. In *Stegald*, the United States Supreme Court held that absent exigent circumstances or consent, officers could not legally search for the subject of an arrest warrant inside the home of a third party, without first obtaining a search warrant. Of course, defense counsel fully appealed the denial of the pre-trial suppression motions in the present case. The Sixth Circuit Court of Appeals affirmed, holding that 1) the officers' search of the trailer owned by Ellis' daughter was supported by probable cause, 2) the evidence established that police officers complied with the knock and announce statute; and (3) *Miranda* warning given by officers to Ellis was not defective. See *United States v. Ellis*, 125 Fed. Appx. 691 (6th Cir. (Ky.) 2005). Such issues may not be relitigated here.

To the extent Ellis argues such issues in the context of a claim of "ineffective assistance of appellate counsel", ineffectiveness claims are generally first raised in a §2255 motion. *United States v. Markarian*, 967 F.2d 1098, 1105 (6th Cir. 1992), *cert. denied*, 113 S.Ct. 1344 (1993); *United States v. Pruitt*, 156 F.3d 638, 646 (6th Cir. 1998); *United States v. Wunder*, 919 F.2d 34, 37 (6th Cir. 1990). However, Ellis' counsel was not constitutionally "ineffective" on appeal merely for not obtaining favorable results, i.e., a reversal of the conviction. An attorney does not have to win every motion or case to be deemed constitutionally "effective" for purposes of *Strickland*. Defense counsel *did* challenge the denial of the suppression motions on appeal, and such issues were fully briefed and argued.

Defense counsel's performance was not objectively deficient on such basis.

Moreover, Ellis could also show no resulting prejudice under *Strickland* because the facts in his case are distinguishable from those in *Steagald*. The present case is quite similar to *United States v.Pruitt*, 2006 WL 2320962, *7 (6th Cir. (Ohio)), where the defendant argued that his Fourth Amendment rights were violated when officers arrested him at his girlfriend's residence home without a valid search warrant for the residence. The Sixth Circuit Court of Appeals observed that "we find the holding in *Steagald* easily distinguishable.... *Steagald* does not resolve the issue before us". *Id.* Under United States Supreme Court precedent, "Fourth Amendment interests are personal." *Minnesota v. Carter*, 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998). In *Pruitt*, the Sixth Circuit pointed out that the *Steagald* court "was not considering the Fourth Amendment rights of the subject of the arrest warrant" and concluded that the defendant "can assert only his own Fourth Amendment rights, and not the Fourth Amendment rights of .... the third-party homeowner in the instant case." *Pruitt*, 2006 WL 2320962 at *8. Thus, Ellis' argument that his appellate counsel was ineffective for not successfully obtaining reversal under *Steagald* is unavailing. Ellis has not shown any grounds for §2255 relief.

**No Hearing Required**

The allegations in the present §2255 motion largely concerns legal issues that can be decided on the record before the Court, and petitioner has not shown any factual disputes that would warrant a hearing with respect to this §2255 motion. The record conclusively shows that the petitioner is not entitled to any relief. See *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996)(holding that "evidentiary hearings are not required when ... the record conclusively shows that the petitioner is entitled to no relief."); *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986); *Vroman v. Brigano*, 346 F.3d 598, 606 (6th Cir. 2003); *Lott v. Coyle*, 261 F.3d 594, 602 (6th Cir. 2001); *Pratt v. United States*, 2004 WL 1859513, *2 (6th Cir. (Mich.))(finding no abuse of discretion in denying defendant's motion without an evidentiary hearing).

**Certificate of Appealability ("COA")**

A certificate of appealability should issue "only if the applicant has made a substantial showing of the denial of a constitutional right", 28 U.S.C. §2253(c)(2), and shall indicate which specific issues satisfy the "substantial showing" requirement. See *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2002)(requiring an "individualized determination of each claim...in considering whether to grant a COA"); see also, *Miller-El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003). The Supreme Court has held that "[w]here a district court has rejected the constitutional claims on the merits, ... [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed2d 542 (2000).

The petitioner has not made a substantial showing of the denial of his right to effective counsel under the requirements of *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Ellis' claim that his counsel was "ineffective" is largely based on underlying issues that have already been litigated and resolved against him. His motions to suppress were fully litigated. Counsel will not be deemed ineffective simply because the trial court ruled against such motions. Jurists of reason would not find it debatable that defendant has failed to make a substantial showing of any objectively deficient performance by defense counsel on such basis. Defendant has also not shown prejudice, i.e., any reasonable probability that, but for counsel's alleged errors, the results of his trial would have been different. Having chosen to take his chances at trial and having been convicted, petitioner now regrets not accepting the earlier plea offer. However, this provides no basis for §2255 relief. Petitioner is not entitled to a certificate of appealability.

## RECOMMENDATION

It is **RECOMMENDED** that:

1) the "Motion to Vacate or Set Aside Sentence" (DE#73) and the "Amendments" (DE#90, 92) by the defendant should be **DENIED** with prejudice; and

2) a certificate of appealability should not be issued.

Particularized objections to this Report and Recommendation must be filed within ten (10) days of the date of service of the same or further appeal is waived. United States v. Walters, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *affirmed*, 474 U.S. 140 (1985). Poorly drafted objections, general objections or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. See *Howard v. Secretary of Health and Human Services*, 932 F.2d 505 (6th Cir. 1991). A party may file a response to another party's objection within ten (10) days after being served with a copy thereof. Rule 72(b), Fed. R.Civ.P.

This the __16th__ day of August, 2006.



Signed By:
J. B. Johnson, Jr.
United States Magistrate Judge